Filed 1/29/24

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| In re | B325525 |
|---|---|
| ANH THE DUONG | (Los Angeles County Super. Ct. No. BA240170) |
| on Habeas Corpus. | |

APPEAL from an order of the Superior Court of Los Angeles County, Mark S. Arnold, Judge. Appeal dismissed.

Habeas Corpus Resource Center, Susan Garvey, Melissa Burkhart, Christina Sandidge and Anuthara Hegoda for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, James William Bilderback II, Assistant Attorney General, Dana Muhammad Ali and Colleen M. Tiedemann, Deputy Attorneys General for Plaintiff and Respondent.

A jury convicted Anh The Duong of multiple murders and imposed a sentence of death. While his automatic appeal to the Supreme Court was pending, Duong filed a petition for writ of habeas corpus in that court. The Supreme Court affirmed his conviction and sentence on appeal (*People v. Duong* (2020) 10 Cal.5th 36, 42 (*Duong*)), and thereafter transferred Duong's habeas petition to the Los Angeles County Superior Court. Duong and the Los Angeles County District Attorney stipulated to granting in part and denying in part Duong's petition. The court, accepting that stipulation, vacated Duong's death sentence and resentenced him to life without the possibility of parole (LWOP). Duong appeals the order based on a provision of the Death Penalty Reform and Savings Act of 2016 (Proposition 66, as approved by voters, Gen. Elec. (Nov. 8, 2016)) that permits an appeal from the denial of a habeas corpus petition "filed by a person in custody pursuant to a judgment of death." (Pen. Code, §§ 1509, subd. (a), 1509.1, subd. (a).)[1] We dismiss the appeal because, no longer being subjected to the death penalty at the time he filed his appeal, Duong is not eligible for the benefits of Proposition 66.

### FACTUAL AND PROCEDURAL SUMMARY

In January 2003, a jury convicted Duong of three counts of first degree murder and one count of second degree murder. (*Duong, supra*, 10 Cal.5th at p. 42.) The jury also found true a multiple-murder special circumstance allegation and firearm use allegations. (*Ibid.*) After a penalty phase trial, the jury

---

[1] Subsequent unspecified statutory references are to the Penal Code.

sentenced him to death.  (*Id.* at pp. 42, 44–45.)  The California
Supreme Court affirmed his conviction and death sentence in
August 2020.  (*Id.* at p. 75.)

On February 23, 2009, the Supreme Court appointed the
Habeas Corpus Resource Center (HCRC) to represent Duong
"for habeas corpus/executive clemency proceedings related to
[Duong's] automatic appeal [then] pending in [the Supreme
Court]."[2]

On December 14, 2015, Duong filed a petition for writ
of habeas corpus in the Supreme Court, raising 14 claims.[3]
(*In re Duong* (case No. S231153).)  In what the parties refer
to as claim No. 6, Duong asserted that he received ineffective
assistance of counsel at the penalty phase of his trial.

While his petition was pending in the Supreme Court,
the electorate approved Proposition 66.  (Stats. 2016, Prop. 66,
§ 1, pp. A-149 to A-157.)  Among other provisions, Proposition 66
enacted section 1509, which requires generally that a habeas
corpus petition filed by a death penalty inmate be heard in the
court that imposed the sentence.  (§ 1509, subd. (a).)  If, as in
this case, the habeas petition was pending in another court when

---

[2] By separate order, we take judicial notice of the
Supreme Court's order in *People v. Duong* (case No. S114228),
dated February 23, 2009, the Supreme Court's order in *In re
Duong* (case No. S231153), dated November 10, 2020, and the
Los Angeles Superior Court's minute order in *People v. Duong*
(case No. BA240170), dated November 17, 2020.

[3] Our record does not include the habeas petition Duong
filed in the Supreme Court.  Our references to its contents are
based on a stipulation among the parties filed in the superior
court.

section 1509 went into effect, the new law authorized the court to "transfer the petition to the court [that] imposed the sentence." (§ 1509, subd. (g).) Pursuant to this provision, the Supreme Court transferred Duong's habeas petition to the superior court, and stated that the Supreme Court "no longer retains jurisdiction over any aspect of this petition."[4]

On November 23, 2020, the trial court issued an order to show cause as to claim No. 6—the claim that Duong's counsel was ineffective at the penalty phase of his trial. The court denied relief on his other claims "due to legal and factual insufficiency."

On November 17, 2022, the People and Duong submitted a stipulation to the trial court stating that Duong is entitled to relief on claim No. 6 and to an LWOP sentence in lieu of a new penalty phase trial. They further stipulated that neither party would appeal any order pertaining to claim No. 6.

On December 7, 2022, the court granted Duong's habeas petition as to claim No. 6, vacated Duong's death sentence, and resentenced him to LWOP on each of the four murder counts. The court stated that "the death penalty is no longer being sought."

On January 4, 2023, Duong filed a notice of appeal from the court's December 7, 2022 order, stating that the claims he asserted in his habeas petition "that sought penalty phase relief are moot" and he is challenging "only those claims (or subclaims)

---

[4] Under section 1509, subdivision (a), the habeas petition is to "be assigned to the original trial judge unless that judge is unavailable or there is other good cause to assign the case to a different judge." In this case, the original trial judge had retired and the matter was assigned to a different judge.

4

which seek guilt phase relief." Duong requested the appointment of counsel in the notice of appeal.

On February 9, 2023, we issued an order to show cause (OSC) directing Duong and the Attorney General to address the following questions: (1) whether this appeal should be dismissed for lack of appellate jurisdiction; (2) if the appeal is not dismissed, whether rule 8.395 of the California Rules of Court applies to the appeal; and (3) whether, in light of the court's resentencing of Duong to LWOP, Duong is entitled to the appointment of counsel in this matter. We stayed further proceedings pending resolution of the OSC or further order of the court.

## DISCUSSION

Under section 1509, "the exclusive procedure for collateral attack on a judgment of death" is a petition for "writ of habeas corpus pursuant to [that] section." (§ 1509, subd. (a).) The parties do not dispute that Duong's petition, originally filed in the Supreme Court prior to the enactment of section 1509 and then transferred to the superior court pursuant to section 1509, subdivision (g), is a "writ of habeas corpus pursuant to [that] section."

Under section 1509.1, "[e]ither party may appeal the decision of a superior court on an initial petition under Section 1509 to the Court of Appeal." (§ 1509.1, subd. (a), capitalization added.)

Duong contends that we have jurisdiction to hear his appeal according to the plain language of section 1509.1. The Attorney General disagrees, arguing that sections 1509 and 1509.1 apply to persons subject to a judgment of death, and Duong is not such a person; he is serving an LWOP sentence

5

and must therefore seek relief, if at all, in the same manner as other LWOP inmates:  By filing a new habeas petition in the Court of Appeal.  We agree with the Attorney General.

"When we interpret an initiative, we apply the same principles governing statutory construction."  (*People v. Superior Court (Pearson)* (2010) 48 Cal.4th 564, 571.)  Our goal is to "adopt a construction 'that will effectuate the voters' intent, giv[ing] meaning to each word and phrase, and avoid absurd results. [Citations.]' "  (*Santos v. Brown* (2015) 238 Cal.App.4th 398, 409.)

As Duong argues, "[o]ur first step is to scrutinize the actual words of the statute, giving them a plain and common[-]sense meaning."  (*People v. Valladoli* (1996) 13 Cal.4th 590, 597.)  Applying the text of the statute here, Duong contends that he "appeal[ed] the decision of a superior court on an initial petition under Section 1509 to the Court of Appeal."  (Capitalization added.)  This court, he concludes, therefore has jurisdiction over his appeal.  We disagree.

The " 'plain meaning' rule does not prohibit a court from determining whether the literal meaning of a statute comports with its purpose or whether such a construction of one provision is consistent with other provisions of the statute. . . . [Citation.]  Literal construction should not prevail if it is contrary to the legislative intent apparent in the statute.  The intent prevails over the letter, and the letter will, if possible, be so read as to conform to the spirit of the act."  (*Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735; see also *Palmer v. City of Anaheim* (2023) 90 Cal.App.5th 718, 725 ["[l]iteral construction should not prevail if it is contrary to the voters' intent apparent in the provision"].)

As its title—the Death Penalty Reform and Savings Act—indicates, Proposition 66 was directed at "California's death penalty system," which the electorate found and declared to be "inefficient, wasteful, and subject to protracted delay, denying murder victims and their families justice and due process." (*Briggs v. Brown* (2017) 3 Cal.5th 808, 823, citing Voter Information Guide, Gen. Elec. (Nov. 8, 2016) § 2, p. 212.) Among the express findings the electorate made in enacting Proposition 66 is that California's "death penalty system is broken, but it can and should be fixed." (Prop. 66, § 2.) To fix the broken death penalty system, the electorate sought to "[r]eform[ ] the existing inefficient appeals process for death penalty cases" (Prop. 66, § 2) and "expedite habeas corpus proceedings in capital cases" (*In re Friend* (2021) 11 Cal.5th 720, 739).

Proposition 66 implements the goal of expediting death penalty cases in various ways, including directing the Judicial Council to adopt rules "designed to expedite the processing of capital appeals and state habeas corpus review" (Prop. 66, § 3, amending § 190.6, subd. (d)), directing the Supreme Court "in a capital case to expedite the review of the case" and appoint counsel "as soon as possible" (Prop. 66, § 5, adding § 1239.1, subd. (a)), requiring that a habeas corpus petition "filed by a person in custody pursuant to a judgment of death" (Prop. 66, § 6, adding § 1509, subd. (a)) "shall be conducted as expeditiously as possible, consistent with a fair adjudication," and that the petition generally be resolved "within one year of filing" (Prop. 66, § 6, adding § 1509, subd. (f)).

These and other Proposition 66 reforms are directed exclusively at "death penalty cases" and intended to address

the perceived "waste, delays, and inefficiencies" of "California's death penalty system." (Prop. 66, § 2.) Neither the text of Proposition 66 nor the related Voter Information Guide express or imply any intent to alter the existing law concerning appeals and the review of habeas corpus petitions in cases other than capital cases. The analysis by the Legislative Analyst published in the Voter Information Guide, for example, states that Proposition 66 "seeks to shorten the time that the legal challenges to death sentences take"; and there is no mention of legal challenges in noncapital cases. (Voter Information Guide, Gen. Elec. (Nov. 8, 2016) p. 105.) The argument in favor of Proposition 66 presented in the Voter Information Guide states that the initiative measure "was written to speed up the death penalty appeals system," and neither it nor the argument against the proposition suggest that the law will impact appeals or habeas corpus petitions filed by criminal defendants who are not sentenced to death. (Voter Information Guide, Gen. Elec. (Nov. 8, 2016) pp. 108–109.)

The electorate's intent in enacting Proposition 66 was to fix a "death penalty system" that it perceived to be "broken" in part because of lengthy delays in obtaining appellate review of death penalty cases. A person such as Duong, who is no longer subject to the death penalty, is no longer involved in the "broken" "death penalty system" that the electorate intended Proposition 66 to fix. Therefore, reading section 1509.1 in light of the explicit purposes the law is intended to serve, we construe the statute as permitting an appeal from the denial of a habeas petition in death penalty cases (Prop. 66, § 2); that is, an appeal by a person who, at the time the appeal is filed, is "in custody pursuant to a judgment of death." (§ 1509, subd. (a).) Because

8

Duong was not in custody pursuant to a judgment of death when he filed the instant appeal, the appellate process Proposition 66 enacted is not available to him.

Duong argues that we should not construe section 1509.1 "to deprive him of his right to appeal—and therefore his entitlement to counsel—solely because penalty relief was subsequently granted on claim [No. 6]." (Capitalization omitted.) He asserts that the "appellate mechanism" provided by section 1509.1 "was designed in part to ensure adequate, efficient, and effective state court process for future federal review," and that our construction of the statute would "undermine [his] ability to timely and efficiently exhaust his state remedies." But these arguments assume his conclusion: that he has the "right to appeal" and the right to the particular "appellate mechanism" provided by Proposition 66. He does not, however, have any right to appeal or to use that mechanism unless section 1509.1 is first construed in the manner he seeks. Because we reject his construction of the statute, his circular arguments fail.

Duong next argues that his construction of section 1509.1 "comports with the practice in federal court where both parties appeal and cross-appeal various portions of an opinion with frequency." (See 28 U.S.C. § 2253(a) ["[i]n a habeas corpus proceeding . . . , the final order shall be subject to review, on appeal, by the court of appeals for the circuit in which the proceeding is held"]; *Gonzalez v. Thaler* (2012) 565 U.S. 134, 140 [federal statute provides "a general grant of jurisdiction" for review of "district courts' final orders in habeas proceedings"].) Nothing in Proposition 66 or the supporting materials suggests that the electorate intended to incorporate federal habeas law

9

into our state habeas and appellate procedures. Indeed, the explicit and broad grant of appellate jurisdiction in federal habeas proceedings contrasts with the grant of appellate jurisdiction under Proposition 66, which is limited to cases in which the habeas petition was "filed by a person in custody pursuant to a judgment of death." (§ 1509, subd. (a).)

Duong further contends that subdivision (c) of section 1509.1 "underscores the conclusion that each party is permitted to appeal grants and denials on initial petitions." But subdivision (c), as is relevant here, merely requires the petitioner to obtain "a certificate of appealability" before appealing from an order "denying relief on a successive petition." (§ 1509.1, subd. (c).) Duong fails to explain how this restriction on the right to appeal a ruling on a successive petition compels the construction he seeks as to the right to appeal generally.

For the foregoing reasons, we hold that a person who files a petition for writ of habeas corpus while the person was in custody pursuant to a judgment of death and who, at the time of filing an appeal from a ruling on the petition, is no longer in custody pursuant to a judgment of death, is not entitled to appeal under section 1509.1.[5] We therefore dismiss Duong's appeal.[6]

In light of our disposition, the additional questions we posed—whether rule 8.395 of the California Rules of Court

---

[5] This case does not require us to consider the separate issue of whether an appeal taken under section 1509.1 when the appellant is in custody under a judgment of death is thereafter rendered moot if the death sentence is vacated while the appeal is pending.

[6] We decline Duong's request to deem his appeal as an original petition for writ of habeas corpus.

applies to the appeal, and whether Duong is entitled to the appointment of counsel as requested in his notice of appeal—are moot.

## DISPOSITION

The order to show cause is discharged.

The appeal is dismissed.

<u>CERTIFIED FOR PUBLICATION.</u>


ROTHSCHILD, P. J.

We concur:


CHANEY, J.


BENDIX, J.


11